HELEN COLGAN *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

FEBRUARY 10, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action of trespass on the case for negligence. It was tried in the superior court before a jury, and resulted in a verdict for the plaintiff in the sum of $12,000. The defendant's motion for a new trial on the usual grounds was granted by the trial justice. The case is before us on the plaintiff's exception to this ruling.

The plaintiff claims that she was injured on Cranston street in Oaklawn, about midnight of October 21, 1935, while she was boarding a car of the defendant inbound to Providence. The inbound track is on the right of the highway at that point and there is practically no sidewalk to the right of that track. The night was clear and pleasant.

The car was operated and controlled by one operator whose post of duty was in the front vestibule of the car, within three feet of the left edge of the vestibule platform. This car was equipped with folding doors which folded inside the vestibule when the doors were opened. On the edges of these doors, where they came together when closed, there was a rubber tubing. The step on the outside of the car leading to the platform moved with the doors, being lowered when the doors were opened and raised against the side of the car below the platform when the doors were closed. The doors were controlled by a hand lever on the front of the car and to the left of the operator. In the middle of the doorway, three inches back from the edge of the platform, there was an iron stanchion running the full height of the doorway, entirely within the vestibule when the doors were fully closed. The register stand for the fares was to the right of the operator.

The testimony shows that the plaintiff and a friend, Evelyn G. Pomfret, had gone for a walk in the country

and were returning to their homes in the direction of Providence; that they were both unmarried, each one being some five feet, two or three inches tall and about one hundred seventy-nine pounds in weight; that they were walking on the highway to the left of the inbound car track because of the condition of the sidewalk to the right of those tracks; that, when they saw the inbound car coming towards them, they waited for it opposite a white pole which was on the right sidewalk; and that the step on the left side of the car was automatically lowered when the operator, after stopping the car, opened the left doors to receive them as passengers.

It appears in evidence that Miss Pomfret boarded the car through the doorway to the right of the stanchion, and that the plaintiff proceeded to board the car immediately thereafter through the doorway to the left of that stanchion, which brought her closer to the operator's post of duty. The plaintiff testified that after she had placed both feet on the step of the car, she took hold of the stanchion, and then put her left foot on the platform; that, while in this position, she handed the operator a dollar bill, which she had previously taken from her pocketbook; and that, as she was in the act of drawing her right foot up onto the platform, "about to drag it in", the operator shut the doors, catching her ankle between the edges of the two doors.

She also testified that she was right in the doorway of the car, holding on to the stanchion when the doors closed; that no part of her body, except the right ankle, was struck by the closing doors; that the car started as the doors closed on her ankle; that the doors, in some manner unknown to her, suddenly opened and that she, still holding on to the stanchion, was thrown to the floor, falling "backwards . . . sort of out the door", and was rendered unconscious. The plaintiff sustained a compound fracture of the lower portion of the right leg with a horizontal laceration of the flesh in that region.

Miss Pomfret testified that as she turned around to sit down on the long seat next to the front platform and to the right of the operator, the car was moving; that she then saw the doors wide open with the plaintiff, who had hold of the stanchion, "hanging out the door backwards . . . you could see the one leg and just the hand in the trolley car"; that the witness' exclamation: "She is hurt" attracted the operator's attention and he stopped the car about a length of the car from the place where she had boarded it; and that, when she went to assist the operator in picking up the plaintiff, she noticed that the plaintiff's "left leg was extended out in the direction of the operator . . . her right leg was down on the steps."

The testimony for the defendant is quite different. The operator testified that the plaintiff was standing on the platform, about a foot and one-half from its edge, when he shut the doors; that he started the car as she stood to his left, getting the fare money from her pocket-book; that the car was moving when she handed him a dollar bill; that he then asked her to step over to the fare register stand on his right, and that, while he was making change, he repeated this request.

The operator's version of the accident in his own words is as follows: "All of a sudden, Miss Colgan stepped back and fell, the door opened and she went sliding out the door and I reached over and grabbed her and she was on her back on the floor; her shoulders were just over the step of the platform, she was sliding out headfirst and I reached over and grabbed her . . . one (foot) was doubled up under her and the other one, I think, was straight out." According to this witness, the car had gone two or three hundred feet when the plaintiff fell.

The operator further testified that the doors of the car could not be closed with a person standing on the step, or with one foot on the step and the other on the platform, with the body in the doorway; and, further, that the car could

not be started unless the doors were actually or practically closed, as the necessary electric contact would not be made before that time. A civil engineer and a foreman of the defendant's repair shop testified to the same effect. There is no explanation as to what caused the doors to open when the plaintiff fell.

There was only one passenger on the car when the plaintiff and her friend boarded it. His testimony in substance is that, from his seat on the right towards the rear of the car, he saw two women board the car through the left door, one going directly to a seat while the other remained standing on the platform to the left of the operator; that he saw the plaintiff hand a bill to the operator, after which the car started in an ordinary manner; that he then closed his eyes and paid no further attention to what was going on in front of him until he felt the car slowing up again after it had gone some distance; that this caused him to look and he then "saw the motorman reach—lean way over as far as he could lean, holding Miss Colgan, and I found out since her name, from going off the car . . . . Leaning over to his left and holding the woman so she wouldn't drop out of the car . . . ."

The rescript of the trial justice granting the defendant's motion for a new trial carefully reviews the evidence and appraises its credibility and weight. The plaintiff contends that the trial justice was in error in ruling as he did, arguing that the following language in the rescript shows he entertained merely a doubt as to the correctness of the jury's verdict: "It seems to the Court that the contentions of the plaintiff as expressed in the two counts of the declaration are not supported by the weight of the credible evidence and that the accident did not occur in the manner testified to by the plaintiff."

We agree with the plaintiff that a trial justice should give weight to a jury's finding and not set it aside upon a mere doubt of its correctness. In such a case he should not sub-

stitute his own judgment for the judgment of the jury. *Somerset Realty Co.* v. *Shapiro*, 51 R. I. 417; *Spiegel* v. *Grande*, 45 R. I. 437; *Humes* v. *Schaller*, 39 R. I. 519. But, on the other hand, this court has repeatedly said that in considering a motion for a new trial it is the duty of the trial justice to pass his independent judgment upon the weight of the evidence and the credibility of the witnesses. *Nichols* v. *New England Tel. & Tel. Co.*, 57 R. I. 180, 183, and cases cited.

The plaintiff argues that the trial justice entertained a mere doubt as to the correctness of the verdict when he said that: "It seems to the Court" that the verdict was not supported by the weight of the credible evidence. This inference might be permissible if the statement under consideration were the only expression of the court. But the plaintiff is not warranted in so doing in this case. In his rescript of seven pages, the trial justice reviews the evidence and expresses his considered judgment as to the weight thereof in a number of instances. Apparently no claim is made by the plaintiff that pertinent evidence was overlooked or misconceived by the trial justice, but, she argues, that he merely "substituted his judgment for that of the jury" on a question as to which "different minds might reasonably and fairly come to different conclusions." This contention is unwarranted when the rescript of the trial justice is read as a whole.

Even were we to grant that the isolated statement referred to by the plaintiff expresses a mere doubt as to the correctness of the verdict, the trial justice later appraised the weight of the evidence in unequivocal language. The concluding paragraph of the rescript, which the plaintiff disregards, reads as follows: "As the verdict in the opinion of the Court is clearly against the weight of the credible evidence bearing upon both of the alleged grounds of negligence and since it does not do substantial justice between the parties, defendant's motion for a new trial is granted."

The trial justice, who saw and heard the witnesses, was in a better position than we are to pass upon the credibility of the conflicting evidence in this case. Since there is nothing to indicate that the trial justice did overlook or misconceive any of the evidence, his decision granting the defendant's motion for a new trial will be regarded by us as of great persuasive force and will not be disturbed unless clearly wrong. *Surmeian* v. *Simons*, 42 R. I. 334, 338. Upon careful consideration of all the evidence in this case and of the entire rescript of the trial justice, we cannot say that he was clearly wrong in deciding that the defendant was entitled to a new trial.

The plaintiff's exception is overruled, and the case is remitted to the superior court for a new trial.

*Patrick H. Quinn, James B. Linehan,* for plaintiff.
*Clifford Whipple, Earl A. Sweeney,* for defendant.